GReen, J.
delivered the opinion of the court.
In 1843, the defendant, Tomlinson, was the owner of these negroes, a woman, Caroline, and her two children, a girl 7 years old, and a boy 5 years old. These negroes having been levied on by virtue of an execution against him, and he being greatly indebted, the said Tomlinson went to Mississippi to see P. H. Hale, who was his brother-in-law, and possessed of means, to prevail on him to become the purchaser of said slaves. Hale agreed to furnish the money, if Tomlinson could get a friend to buy them, and pay for them in the first instance. Tomlinson told him the defendant Arrowsmith had money and could be relied on, and that he thought Arrowsmith could be prevailed on to purchase the negroes, and advance the money. Hale thereupon handed Tomlinson, $100, to be placed in the hands of Arrowsmith, and wrote Arrowsmith a letter, requésí-ing him to purchase the negroes for him, and promising, subsequently, to forward the entire sum which might be advanced in making said purchase; Tomlinson handed Arrowsmith *382 Hale’s letter, and the $100, and Arrowsmith agreed to buy the negroes. At the sale there were a number of persons, and several men who were in attendance, failed to bid for the slaves, because all the slaves now in dispute, were at the instance of Tomlinson, put up together, and it was understood that Arrowsmith was to buy them, and permit Tomlinson to redeem them. This was suggested by Tomlinson, to several persons who had intended to bid, and who were thereby deterred from doing so; and it was generally understood among the persons in attendance at the sale, that Tomlinson was to be permitted to redeem the slaves.
Arrowsmith did become the purchaser of the slaves, for the price of $501, they being at the time, worth $700. Hale has, since the sale, advanced two hundred dollars to Arrowsmith, making in all $300 paid by him. Hale procured the negroes to be purchased by Arrowsmith, in order, that they might be kept together, and that Tomlinson might redeem them if he became able. The complainant, English, is a creditor of Tom-linson, and brings his bill to have a decree for an account, and sale of the slaves, and that the surplus be applied to his debt. We think the evidence in this case establishes that there was an understanding between Hale, Tomlinson and Arrowsmith, that the negroes were to be purchased by Arrowsmith and held by him, subject to a right on the part of Tomlinson to redeem them, if he should become able.
There may not have been an express agreement to this effect, but the circumstances convince us, that such was the distinct understanding. Tomlinson and Arrowsmith, in their answer, while they deny that there was any contract that Tomlinson might redeem, admit that “Hale made said advance to avoid a seperation of the negroes from each other, and their family, and it may be, that they could be repurchased by said Tomlin-son.” The witness Malone, was in Mississippi in March or April, 1845, and in a conversation, Hale told the witness that *383 he had ■ furnished Tomlinson $300 to enable him save his negroes; that Tomlinson had. told him, he thought he could' make a friend in Tennessee, if he had the money, to buy in and save the negroes for him, but that if he- could not get the money to pay back, he, (Hale,) should have the negroes. Hale enquired of the witness if he thought Tomlinson had the means to save his negroes.
Arrowsmith since the sale, told the same witness, that Tom-linson was a singular man; that at first he seemed to be satisfied if he could only save the woman and children, but that afterwards he wanted to save the boy also; that he had agreed to purchase the woman and children for him, and had received $300 from Tomlinson, which he said he had got from his brother-in-law, P. H. Hale, of Mississippi. Tomlinson on the day of the sale, deterred bidders by representing to those present, that Arrowsmith was to purchase the negroes, and permit him to redeem them. By this means the negroes, worth $700, were sold for only $501. The evidence shows, that Tomlinson has not been enabled to redeem the negroes, and that he is hopelessly insolvent.
We, think Arrowsmith must be regarded as holding these negroes in trust for Tomlinson; and that the complainant, who is a creditor, is entitled to a decree for the resale of the slaves, and to have the surplus, after the payment of the amount advanced by Piale and Arrowsmith, applied to his debt.
2. But if the evidence of a contract, or understanding, that Tomlinson should be permitted to redeem, were less satisfactory than it is; still the circumstances connected with the sale, are such, that it would be inequitable to permit it to stand absolutely. Hale, it is true, was not at the sale, and personally, had nothing to do with the transactions concerning it; but he placed his money in the hands of Tomlinson, and authorized Tomlinson to procure a purchaser for the negroes, and thereby *384 made Tomlinson’s representations on the day of sale,' that he was to be permitted to redeem the slaves, be regarded as evidence that there was a contract to that effect, or if not, certainly they had the eflect to prevent competition among the bidders, and to enable Arrowsmith' to get them for an inadequate price.
Creditors of Tomlinson, assured by him, that he was to have the privilege of redeeming the slaves might well forbear to bid, because such contract existing, the diminished price at which the negroes might sell, would work no injury to such creditors. If Tomlinson should not be enabled to redeem, the trust in his favor would enable his creditors to obtain the surplus after deducting the sum paid at the sale. But if this sale shall stand absolutely, Hale will, by means of these representations of his agent, have obtained these slaves for an inadequate price; where, had the representations not have been' made, the creditors, acting upon their interests, would have made the property sell for its full value. It is clear, that by these representations, the creditors of Tomlinson would be deprived of all the difference between the price for which the negroes sold, and their true value, which would be a fraud upon them. Boyd vs. Dunlap, 1 John. ch. Rep. 478. Loyd vs. Currin, 3 Humph. R. 465.
Upon either of the grounds stated, therefore, we think, the complainant is entitled to a decree.